SCHAUT, Appellant, vs. BARKHAUSEN COAL & DOCK COM-
PANY, Respondent.

*May 23—June 17, 1914.*

*Master and servant: Injuries: Defective appliances: Unsafe place:
Contributory negligence: Questions for jury.*

In an action for injuries to an employee who, while engaged in
loading buckets of coal in the hold of a vessel, was struck by a
piece of coal from a loaded bucket which unexpectedly dumped
as it was being hoisted, it was a question for the jury, under
the evidence, whether or not he was guilty of contributory
negligence in stepping from the shelter of the deck out under
the hatchway to resume his work before the bucket had in
fact passed safely beyond the hatchway.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Reversed.*

Action for personal injury. Plaintiff, aged thirty-five,
went to work for the defendant for the first time upon the
day of his injury, loading buckets with coal in the hold of a
vessel that was being unloaded at defendant's dock. He was,
however, familiar with the work he was doing. The bucket
in question, which unexpectedly dumped, weighed about 900
pounds empty and about 1,800 pounds loaded. The boat lay
on the north side of the dock headed west. On the dock
there was a bridge that ran to the edge of the water, from
the end of which there was a boom running out over the boat.
A carriage running on the bridge and boom held the buckets,
and when they reached the end of the boom they were low-
ered into the hold of the vessel through the hatch by means
of a bumper that caused them to drop. When the bucket
was filled it was raised to the end of the boom, where it
struck a trip that loosened the carriage, and it then ran out
on to the boom and bridge and was dumped on the dock where
desired. The bail of the bucket was fastened to it behind the
center so that there was much more weight in front than
there was behind. It was kept from dumping by means of

a dog, which when released allowed it to dump. The bucket in question had been nicknamed "The Devil" by the men on account of the frequency with which it unexpectedly dumped, but this was unknown to plaintiff. The hatch on the boat being unloaded was thirty-six feet long and eight feet wide running across the boat, or as it lay, from north to south. The boat was forty-five feet beam, leaving a covered space in the hold at each end of the hatch, called the wing, of about five feet. When the buckets are loaded and ready for hoisting the men are expected to step back in under the deck, so as to be out of danger of coal falling therefrom as it is lifted to the boom and until it passes the combing of the hatch. On the day in question the bucket called "The Devil" was loaded, and as it was being hoisted it dumped and a piece of coal struck and injured the plaintiff. There is a sharp conflict in the evidence as to whether when the bucket dumped it had passed beyond the comb of the hatchway, and also as to whether plaintiff was in under the deck or out in the hatchway when he was struck. Some of the evidence of the plaintiff is to the effect that he was in under the deck slightly and that when the bucket dumped it was beyond the combing of the hatch and coal was thrown backwards and struck him. The evidence of the defense is to the effect that plaintiff was from two to three feet out in the hatchway, having started to go to his place of work to clean up coal in the wing, and that the bucket had not passed the hatchway when it dumped. The trial court rejected the evidence of the plaintiff that the coal was thrown backwards as being contrary to physical laws, and granted a nonsuit on the ground of plaintiff's contributory negligence as a matter of law because he had stepped out into the hatchway before the bucket had safely passed from over it. The plaintiff appealed.

For the appellant there were briefs by *Kittell & Burke,* attorneys, and *Victor I. Minahan,* of counsel, and oral argument by *J. A. Kittell.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin* and *Jeremiah Clifford.*

VINJE, J. The only question litigated on the appeal was plaintiff's contributory negligence, and the greater part of the effort of counsel on both sides was directed to the question of whether or not coal could be thrown backwards when dumped, under the circumstances in which it was dumped in this case. We shall assume that the trial court was correct in holding that it could not, and we shall dispose of the case upon the theory that the bucket had not passed completely out from over the hatchway when it dumped and that plaintiff had made a step or two out into the hatchway when he was struck. The question arises, Can plaintiff be held to be guilty of contributory negligence as a matter of law under such circumstances? The evidence shows that a bucket is loaded about every four minutes, and that as soon as it has safely passed from over the hatchway the men are required to clean up coal in the wings or other places where it is needed until another bucket is ready for loading. The men are expected to step out of the hatchway while a bucket is being hoisted and to remain out from under it until it has safely passed beyond the hatchway so that there is no danger from falling coal. It is obvious that it requires close observation and some judgment to determine when a bucket has safely passed a hatchway. The boom ran out over the center of the hatch, and the buckets, when they reached it and began to travel thereon, would be a considerable distance above where the men stood in the hold of the vessel. The speed of the bucket, the distance of the end of the boom from the hold of the boat, and the position of the man looking at the disappearing bucket would all affect the question of when it had passed out of danger. Under such circumstances it seems to us it was a question for the jury to say whether or

not plaintiff was guilty of contributory negligence in stepping out before he was safe. Work must necessarily be active when boats are unloaded, and there is not much time for careful observation and examination. Diligence if coupled with ordinary care ought not to lessen the chance of recovery from an injury sustained while at work. Plaintiff testified that he looked at the bucket and thought it had passed the hatch when he started to go to clean up. Evidently he was mistaken, but the mistake does not show negligence as a matter of law. Inferences to the effect that he was in the exercise of ordinary care when he stepped out to resume work may reasonably be drawn from the situation that existed owing to the difficulty of accurately determining the exact line between safety and danger. We think it was peculiarly a question for the jury to determine whether or not he was in the exercise of ordinary care at the time he was injured, and for that reason shall forbear to comment in detail upon the evidence. In reaching this conclusion we have not forgotten the fact that this bucket had dumped twice before that day while plaintiff had been at work. This is a circumstance that must be weighed by the jury together with the other facts and circumstances touching the question of plaintiff's contributory negligence.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.